## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TOM BRIGGS, Personal Representative for
the Estate of THOMAS E. BRIGGS, Deceased,

                                                     CASE NO. 04-73458

      Plaintiff,                                     HON. LAWRENCE P. ZATKOFF

v.

OAKLAND COUNTY, OAKLAND COUNTY
SHERIFF'S DEPARTMENT, SUPERVISOR
DEVITA, SGT. CLARK, DEPUTY SZYDLOWSKI,
DEPUTY HUBBLE, DEPUTY RHYNDRESS,
DEPUTY JONES, DEPUTY VASQUEZ, SANDY
STETZ, RN; DEBBIE TIPTON, RN; and CONNIE
ZAMORA, RN, Jointly and Severally,

      Defendants.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendants' Motion for Summary Judgment.  Plaintiff has

responded and Defendants have replied to the response.  The Court finds that the facts and legal

arguments are adequately presented in the parties' papers and the decision process would not be

significantly aided by oral argument.  Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby

ORDERED that the motion be resolved on the briefs submitted.  For the reasons set forth below,

Defendants' Motion for Summary Judgment is GRANTED.

## II. BACKGROUND

**A. Procedural History**

Plaintiff Tom Briggs (hereinafter, "Plaintiff") filed the present action on September 3, 2004, on behalf of decedent Thomas E. Briggs (hereinafter, "Briggs"). In his Complaint, Plaintiff alleges that Defendants Oakland County, Oakland County Sheriff's Department, and employees of the Oakland County Jail, violated Briggs' constitutional rights when they failed to properly treat him for an injury he suffered when he fell off the bunk in his jail cell.

**B. Facts**

Plaintiff's decedent, Thomas E. Briggs, was an inmate in the Oakland County Jail on June 13, 2004. Briggs was being held in cell C1C, and had been at the jail for approximately 8 days as a pre-trial prisoner. At approximately 10:40 p.m., Defendants Hubble, Devita, Jones, and Rhyndress, while working their nightly shift at the jail, heard inmates banging on their bars. Defendants Devita, Hubble, and Rhyndress walked to cell C1C and observed Briggs laying still on the floor. This information was relayed to Defendant Jones, and Jones made a radio call for a nurse to come to cell C1C.

The inmates in the cell said that Briggs fell off his bunk and that they thought he was having a seizure. *See* Exhibit A, at 18. Defendant Devita testified that he did not observe any seizure-like activity. *Id*. The guards removed the other inmates from cell C1C and Defendants Devita and Rhyndress proceeded into the cell. Briggs remained lying on the floor and stated that he had fallen out of his bunk, but denied that he was having a seizure or withdrawing from drugs. *Id*. at 27. When questioned where he was hurt, Briggs pointed to his left side in his rib area. According to Deputy Devita, Briggs did not have any difficulty speaking, nor did he give any indication that he was in

2

pain. *Id.* at 28. Deputy Rhyndress observed Briggs having difficulty breathing and temporarily taking numerous breaths. *See* Exhibit D, at 19-20. Deputy Rhyndress lifted up Briggs' shirt and observed a slight discoloration of the skin. *Id.* at 17. Deputy Devita did not observe any injury nor anything abnormal. *See* Exhibit A, at 27.

Upon being notified that they were needed at cell C1C, Defendant Nurses Zamora and Stetz grabbed a stethoscope, blood pressure cuff, and gloves and immediately proceeded to C1C. *See* Exhibit F, at 51. Upon entering the cell, Nurse Zamora observed an inmate lying face down on the floor. Deputy Devita told Zamora what the inmates had said regarding Briggs' fall and that they believed he was having a seizure. Deputy Devita also explained to Nurse Zamora what Briggs had stated regarding his fall. Deputy Rhyndress pointed out the area of discoloration he had observed on Briggs' side.

Briggs indicated that he needed to use the restroom because of his diarrhea and stated that he could make it on his own. Briggs made it to the toilet without any assistance in "a crawling, running position." Exhibit D, at 18. Nurse Zamora told the deputies to bring Briggs to the clinic in a wheelchair once he was finished with the toilet. When Briggs was finished with the toilet, Deputy Devita observed Briggs wash his hands at the sink and walk slowly to the wheelchair that had been brought to the cell. Briggs did not favor his left side, nor did he appear hunched over or have any difficulty breathing. Exhibit A, at 34, 36; Exhibit D, 21-22. Briggs was then taken by wheelchair to the clinic at K-block. After returning the inmates to the cell, Deputy Jones shut the gates and returned to shift assignment. Exhibit C, at 13. Deputy Rhyndress also continued his shift and did not see Briggs again.

Defendants Nurses Zamora and Stetz were already at the clinic when Briggs was brought in

by wheelchair shortly before 11 p.m.  As Nurse Zamora attempted to obtain Briggs' vital signs, Briggs stated that he had to go to the bathroom, got up from the wheelchair, and ran to the bathroom. Exhibit F, at 61.  About two minutes later, he returned and walked back to the wheelchair. Defendant Nurse Tipton, who was also nearby, observed Briggs getting in and out of the wheelchair to use the bathroom and testified that there was nothing unusual about the way Briggs was moving. Exhibit I, at 39-41.  Nurse Zamora then took Briggs' vital signs and observed that he did not have any abrasions or anything abnormal about his appearance and that he was not short of breath.  *Id.* at 62.  Briggs' blood pressure was recorded at 130/74 with a pulse rate of 88.  Exhibit J.  Nurse Zamora asked Briggs about his diarrhea and whether or not he was going through withdrawals. Briggs responded that he had already been through withdrawal, and that the diarrhea had started that day.  *Id.*  Briggs then told Nurse Zamora that he needed to use the restroom again and ran to use the toilet.  When he returned, Nurse Zamora informed Briggs that she would give him some Mintox and Kaopectate to help him with any withdrawal and diarrhea.  *Id.* at 67.

Once Briggs had finished using the toilet again, Nurse Zamora gave him the medicine in a cup and Briggs drank the medicine.  Briggs was then informed that he would be monitored in cell K-3 at the clinic to see if he felt any better or if his diarrhea improved.  *Id.* at 68.  Nurse Zamora then left K-3 and had the deputies close and lock the door.  She then began working on Briggs' paperwork.

After completing their other duties, Deputies Hubble and Devita each went to K-block to check on Briggs' condition.  They were each told by the nurses that Briggs would be observed for an hour before sending him back to his cell.  The nurses also indicated that they believed Briggs had been going through heroin withdrawals and that they were giving him something for his diarrhea.

4

Exhibit B, at 51.  Deputy Devita observed Briggs using the restroom in K-3 and he did not appear
to be in pain.  Exhibit A, at 46-48.  Deputy Hubble also observed Briggs in K-3, though now Briggs
was standing up and beating on the glass part of the door to the cell.  Exhibit B, at 32-34.  Briggs
yelled at Hubble white beating on the glass, "F___ you Hubble.  You can't keep me here.  I want
to go back to my cell and watch the basketball game."[1]  *Id*.  Nurses Tipton and Zamora also heard
Briggs yelling to be let out.  Exhibit I, at 41.

At approximately, 11:15 p.m. or 11:20 p.m., Nurse Zamora looked into K-3 and observed
Briggs lying down and changing positions from his back to his side.  Exhibit F, at 73.  A few
minutes later, and approximately 20 minutes after Briggs had been placed in K-3, Nurse Tipton
looked into the cell and observed Briggs laying and the floor and not moving.  Exhibit I, at 48.
Nurse Tipton testified that this was no more than four minutes after she heard Briggs pounding on
the floor.  *Id*. at 49.  The nurses immediately instructed the deputies to open the cell.  When the
nurses entered, they found Briggs laying on his back on the floor, with his head toward the door, and
with pink vomit surrounding him.  Exhibit F, at 76.  Nurse Zamora did not observe any blood in the
vomit.

Nurse Zamora was unable to find a pulse and told the deputies to call 911.  A deputy assisted
in moving Briggs out of the cell into the nearby day room to further assess his condition.  Briggs
continued to vomit and was placed on his side.  *Id*. at 79.  Nurse Zamora stayed with Briggs as the
other nurses retrieved the AED, the ambu bag and oxygen.  *Id*.  When no pulse was found, Nurse
Zamora began giving Briggs breaths through the ambu bag.  The nurses continued CPR efforts until

---

[1] The Detroit Pistons were playing on TV that night in the NBA Finals.

the paramedics arrived approximately ten minutes later.[2]  *Id*. at 82.  Briggs was pronounced dead

at North Oakland Medical Center.  An autopsy later revealed that the cause of death was "blunt force

chest and abdominal trauma and complications thereof sustained during a fall."  Exhibit 1, at 6.

More specifically, the autopsy revealed that Briggs suffered two fractured ribs on his left side, and

that his spleen had ruptured, causing a loss of blood in the abdominal cavity.  *Id*. at 3.  The autopsy

also revealed that Briggs died at about 11:37 p.m.  This estimated time of death is approximately one

hour after Briggs was first injured at 10:45 p.m. and approximately 20 minutes after he was locked

in K-3 for observation.

Defendant Sergeant Clark was the sergeant in charge of the jail that afternoon and was the

supervisor Deputy Devita reported to.  Sergeant Clark heard a radio transmission about a medical

condition but did not respond to this transmission. Exhibit E, at 9.  The next information he received

was a radio call that there was a man down in cell block K.  Sergeant Clark immediately responded

to this area and observed an inmate and what appeared to be vomit, as well as a number of nurses

and deputies around the inmate.  Since the AED indicated not to shock Briggs, Sergeant Clark began

doing chest compressions.  He continued to do so until the paramedics arrived.  *Id*. at 10-12.

Deputies Vasquez and Szydlowski were also working at the jail that night and have been

named as Defendants.  Defendant Vasquez observed Briggs sitting on a toilet in K-3 shortly after

11 p.m.  Defendant Szydlowski checked on Briggs in K-3 at the start of his shift and observed that

Briggs was laying in the middle of his cell and did not appear to be in discomfort.  Exhibit H, at 10-

11.  When the nurses observed Briggs laying on the ground, Deputies Vasquez and Szydlowski

---

[2] The paramedics arrived at approximately 11:44 p.m.  This was approximately one hour after Briggs was first injured at 10:45 p.m.

assisted in opening the K-3 cell and dialing 911.  Exhibit G, at 73; Exhibit H, at 21.

### III. LEGAL STANDARD

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c).  A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted).  In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324.  The non-moving party must do more than show that there is some metaphysical doubt as to the material facts.  It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment.  *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

# IV.  ANALYSIS

## A. Individual Defendants

### 1. Law

In determining Plaintiff's claims against the individual Defendants Devita, Clark, Szydlowski, Hubble, Rhyndress, Jones, Vasquez, Stetz, Tipton, and Zamora, the Court applies the "deliberate indifference" standard.  "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976).  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care  or intentionally interfering with the treatment once prescribed."[3]  *Id.*

The "deliberate indifference" standard encompasses both an objective and subjective element and "describes a state of mind more blameworthy than negligence."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  In *Farmer*, the Court held that the "deliberate indifference" standard is not met unless a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.

### 2. Application

Plaintiff cannot satisfy the above standard for "deliberate indifference."  Plaintiff has failed to present any evidence that any of the individual Defendants knew of Briggs' broken ribs or

---

[3] Though not protected under the Eighth Amendment's proscription against cruel and unusual punishment, pre-trial detainees are similarly protected under the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520 (1979) ("[T]he proper inquiry is whether those conditions [of pre-trial detention] amount to punishment of the detainee.").

lacerated spleen.  Instead, Plaintiff relies on numerous affidavits from medical professionals stating what the individual Defendants "should have known" or what they "should have done" in response to Briggs' condition.  *See* Plaintiff's Brief, at 7-8.  Nurse Zamora was the individual Defendant primarily responsible for Briggs' care.  When questioned about whether she knew of Briggs' broken ribs, she answered: "No.  Mr. Briggs never said one word about anything about pain or anything, or guarding himself, anything that would indicate that he would have something wrong."  Exhibit 7, at 106.  Nurse Zamora's answer is consistent with the observations of the other nurses and deputies.  Additionally, there is no evidence that the nurses or deputies were in any way aware of Briggs' ruptured spleen.  This accords with common sense, as such an injury not readily observable.  Accordingly, the Court finds that there is no evidence that any of the individual Defendants knew of and disregarded an excessive risk to Briggs' health or safety.  For this reason, summary judgment should be granted in favor of the individual Defendants.

**B. County Defendants**

Plaintiff's Complaint also alleges constitutional violations against Defendants Oakland County and the Oakland County Sheriff's Department, alleging that Defendants' official policies and customs exhibited deliberate indifference toward the Plaintiff's decedent, Mr. Briggs.  Plaintiff's allegation fails.  "[W]hen a plaintiff alleges that a municipal defendant has failed to properly train the individual defendants, the municipal defendant cannot be held liable under § 1983 when the plaintiff has failed to establish a constitutional violation by the individual defendants."  *Crocker v. County of McComb*, 285 F. Supp. 2d 971, 977 (E.D. Mich. 2003); *see also Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)).

9

For this reason, Oakland County and the Oakland County Sheriff's Department should be granted summary judgment.

## V. CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is HEREBY GRANTED.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  December 7, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on December 7, 2005.


s/Marie E. Verlinde
Case Manager
(810) 984-3290

10